SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JESSICA KEEFER, MSB # 1412180261**
Assistant United States Attorney
Jessica.Keefer@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**PATRICK ALLAN YEAGER SNELL,**

**Defendant.**

**3:24-cr-00450-AN**

**GOVERNMENT'S SENTENCING MEMORANDUM**

**Introduction**

On July 1, 2024, the defendant, Patrick Allan Yeager Snell, knowingly aimed the beam of a blue laser pointer at an HH-60M Blackhawk that was flying a training mission as part of the Oregon State Army National Guard. The training mission was interrupted when the pilot had to mauver the helicopter to avoid the laser due to the danger to the aircrew members. The defendant later admitted his conduct to law enforcement. The defendant should receive a time served sentence, followed by six months of supervised release.

**Factual Background**

**A. The Offense Conduct**

On July 1, 2024, the Oregon Army National Guard was flying a training mission in the vicinity of the Mulino State Airport, which is 23 miles south of Portland in Clackamas County, Oregon. During the mission, the defendant aimed a blue laser beam and a white spotlight at helicopters while they were in flight.

The defendant first aimed the blue laser at a HH-60M Blackhawk helicopter with two pilots and three aircrew members on board. The helicopter was flying at approximately 1,000 to 1,200 feet in the air. The crew chief reported a blue laser that was being shined at the aircraft at the cockpit and the pilots. The blue laser remained pointed for about 30 seconds. A second crew member captured the incident on their cellphone. The laser pointer lit up the crew cabin, and at one point goes directly into the camera. Because the danger the laser represented to the aircrew, the crew chief had to mauver the helicopter to avoid it. This interrupted the National Guard's training mission.

The crew chief was able to use the helicopter GPS to identify that the laser was coming from a specific address on Macksburg Road, Molalla. Based on the video, the laser appeared to originate from an area next to a white RV on a clear and discrete area of property.

After the first incident, the crew chief radioed the second helicopter that his aircraft had just been lasered. The second helicopter passed over the location with two crew members. One crew member saw a white spotlight from the ground that followed the helicopter. Another crew member saw a blue light.

Law enforcement responded to the property on Macksburg Road and identified that the defendant lived on a RV on the property in August 2024. The property owners confirmed that the

defendant asked one of the owners to purchase a laser point to stop the aircraft activity over the property. One owner confirmed that they did buy the defendant a laser pointer, and that they saw the defendant pointing the laser pointer into the sky on July 1, 2024, while an aircraft was in the sky. When the property owner asked the defendant what he was doing, the defendant indicated he was irritated by the aircraft flying back and forth over the property. The property owner later turned over the blue light laser point to law enforcement.

The defendant spoke with law enforcement officers on the property in September 2024. The defendant stated that there were over 200 times where helicopters flew over the property in the last year and his actions were a way of him saying "I'm sick of this s***, get away from me." The defendant stated that he shined the laser for approximately 20-30 seconds and shined a handheld white light spotlight at the helicopter. The defendant confirmed that the laser was his. The defendant stated that he has not used the laser or done anything since this incident. The defendant admitted he understood the danger of the laser given his background as a former EMT. The defendant also stated he never intended to harm anyone with the laser point, but later stated he would continue to protect the property until the "harassment" ended, including shooting down any drones that may fly over the property, government or otherwise.[1]

**B. The Charges**

Defendant was charged in a single count indictment with Aiming a Laser Pointer at an Aircraft in violation of 18 U.S.C. §39A.

[1] During a September 12, 2024, phone call with law enforcement, the defendant threated to end his life immediately if he were to be arrested and noted he would not survive if he went back to jail.

**C. The Plea Agreement & Guideline Computations**

Defendant agreed to plead guilty to the sole count. The government also, subject to the limitations set forth in the agreement, recommends that defendant receive a two-level reduction for acceptance of responsibility.

The parties agree with the following PSR computations:

| Enhancement | Government's Position |
|---|---|
| Base—<br>USSG § 2A5.2 | 9 (not contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | -2 (not contested) |
| **Total Offense Level** | **7** |
| **Resulting Guideline Range** | **0-6 months** |

**Argument**

**A. Government's Recommended Sentence**

The defendant has resolved his case and demonstrated an acceptance of responsibility by entering guilty. Per the plea agreement, the government recommends, as a reasonable sentence under the factors listed in 18 U.S.C. §3553(a), a sentence of time-served, with six (6) months of supervised release, and a $100 special assessment.[2]

Aiming a laser beam at any aircraft poses a serious safety risk – not only to the pilot, but any other people on board the aircraft and those on the nearby ground. A laser beam can cause vision impairment, disorientation, and temporary blindness – all of which could lead to a potential midair aircraft collision or crash.

The defendant's actions were dangerous and could have been put people in the aircraft, and on the ground, at risk. Beyond the danger, the defendant's actions did disrupt the Oregon Army

[2] The defendant has served approximately one (1) day in pretrial detention. *See* PSR ¶ 12.

National Guard training mission. The defendant, however, did admit to his conduct when subsequently interviewed by law enforcement. The laser was turned over to law enforcement by a third party.

The defendant has a calculated criminal history score of zero. The defendant does have prior convictions for Resisting, Menacing, Child Abuse with Injury Knowing and Reckless, Harassment and Cruelty to Animals. Those convictions, however, are all nearly 30 years old or older. In this case, since his arrest on January 23, 2025, the defendant has been on pretrial release with no reported violations of those conditions. PSR ¶ 12.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, the government recommends a sentence time served sentence, followed by six (6) month term of supervised release, is reasonable. The defendant's actions were dangerous and disruptive, but he admitted to his conduct and has not violated during his term of pretrial release. He has prior criminal history, including assaultive convictions, but it is significantly aged. His history of reported mental health issues, the conduct and statements to police during the investigation warrant a period of supervised released with the standard conditions and special conditions as recommended in the Presentence Report.

/ / /

/ / /

**Conclusion**

Based on the foregoing, the government recommends that this Court impose a sentence of time served, followed by a six (6) month term of supervised release, subject to the standard conditions and special conditions, and a $100 special assessment.

Dated: August 20, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Jessica R. Keefer*
JESSICA R. KEEFER, MSB #1412180261
Assistant United States Attorney